***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS *Page 2 
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Amerisure Ins. Companies (hereinafter referred to as "Defendant-Carrier") provided workers' compensation insurance coverage to Defendant-Employer at all times relevant to these proceedings.
4. Plaintiff's average weekly wage was $1,083.88, pursuant to a Form 22 submitted at the hearing before the Deputy Commissioner.
5. Rose Furniture and Amerisure Ins. Companies (hereinafter referred to as "Defendants") accepted as compensable Plaintiff's June 7, 2004 work injury that caused a left hip fracture. Defendants paid for all medical expenses related to Plaintiff's left hip fracture, as well as indemnity compensation at the rate of $421.58 for the period from June 8, 2004 through June 30, 2004, and at the rate of $692.04 for the period from July 1, 2004 through July 30, 2004.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit one (1) — Various documents, including:
 i. North Carolina Industrial Commission forms and filings;
 ii. Pre-trial Agreement;
 iii. Plaintiff's medical records.
 b. Plaintiff's Exhibit two (2) — Plaintiff's resume.
 *********** ISSUES
The issues for determination are: *Page 3 
1. Whether Plaintiff suffered an injury by accident to her back on June 7, 2004?
2. Whether Plaintiff is entitled to any additional workers' compensation benefits?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 62 years old, with her date of birth being July 7, 1946. Plaintiff is a college graduate with a Bachelor of Science degree in business administration. Prior to Plaintiff's employment with Defendant-Employer, she worked as a buyer for large department stores in Birmingham, Alabama. Plaintiff later moved to Charlotte, North Carolina and worked for Belk buying children's clothes. Plaintiff then moved to High Point, North Carolina and worked for several years as a furniture representative for an import company. Finally, Plaintiff worked for Annex Furniture prior to her employment with Defendant-Employer.
2. Plaintiff's employment with Defendant-Employer began in January 1987 as a salesperson. Plaintiff continued working in that capacity until she resigned on January 18, 2007. As a salesperson for Defendant-Employer, Plaintiff built her business by waiting on customers on the floor. Later, Plaintiff began to conduct more of her sales work by telephone. Defendant-Employer's sales floor is approximately 200,000 square feet. Plaintiff often walked as many as two (2) miles per day if she was attending to the needs of telephone customers, and as much as five (5) miles per day if her sales work was on Defendant-Employer's sales floor.
3. On June 7, 2004 Plaintiff was walking at work when the heel of her shoe pierced the carpet and became hung. As a consequence, Plaintiff fell forward, landing on the floor on her left side. The floor was made of cement and covered with a thin layer of industrial carpet. *Page 4 
Shortly after Plaintiff fell, an ambulance transported her to the emergency department of High Point Regional Health System, where x-rays revealed a left hip fracture. At that time, Plaintiff only reported left leg pain and denied any injury other than to her left leg and left side.
4. Plaintiff underwent an open reduction and internal fixation surgery on her left hip, performed by Dr. Kenneth Charles Lennon. On June 10, 2004 Plaintiff moved to inpatient rehabilitation, where she came under the care of Dr. John Emil Begovich, who prescribed Vicodin for pain. Dr. Begovich examined Plaintiff's spine and found no pain on palpation.
5. Following Plaintiff's discharge from inpatient rehabilitation on June 18, 2004 she presented for follow-up care to Dr. Lennon on June 30, 2004, at which time x-rays revealed good position of the left hip fracture with good rotation. Plaintiff reported taking three (3) to four (4) Vicodin per day. Although Dr. Lennon's records from this visit do not document that Plaintiff reported any problems with her back to him, Ms. Diane Oakely, Plaintiff's nurse case manager who was present at this appointment, did document that Plaintiff described throbbing pain in her left thigh. Dr. Lennon released Plaintiff to return to modified work for Defendant-Employer, with no weight bearing on her left leg, and with the use of a walker at all times.
6. On July 7, 2004 Plaintiff returned to sedentary, part-time work for Defendant-Employer. Plaintiff used a scooter to ambulate on the sales floor. She worked two (2) to three (3) hours per day and continued to take Vicodin for her pain.
7. On July 20, 2004 Plaintiff returned to Dr. Lennon and reported continuing left leg pain. At that time, Dr. Lennon continued Plaintiff's modified work restrictions.
8. On August 23, 2004 Dr. Lennon ordered that Plaintiff participate in physical therapy and that she continue her modified work restrictions. Dr. Lennon's records from this visit do not document that Plaintiff reported any problems with, or any injury to her back; *Page 5 
however, Ms. Oakely documented in her report on this same date that Plaintiff complained to Dr. Lennon of continued left leg pain, as well as left knee weakness and pain. Ms. Oakley also noted that Plaintiff continued to use her scooter at work to ambulate and continued walking with an altered gait.
9. On September 28, 2004 Plaintiff returned to Dr. Lennon, who recorded in his notes from this visit that she was not in any pain, but was still limping. Dr. Lennon released Plaintiff to return to full-time work, which she began subsequent to this appointment. Ms. Oakley noted in her report of this visit that Plaintiff expressed concern regarding a continued loss of strength and increased pain in her left leg and pain in her left knee.
10. On December 15, 2004 Plaintiff returned to Dr. Lennon, at which time she reported continued left hip pain and increased pain overall. Plaintiff also reported that she stopped taking her prescription anti-inflammatory medications.
11. On March 3, 2005 Dr. Lennon noted in his records that Plaintiff had good bony healing from her left hip open reduction and internal fixation surgery. Dr. Lennon determined that Plaintiff was at maximum medical improvement and assigned a 12 percent permanent partial disability rating to her left lower extremity.
12. On May 20, 2005 Plaintiff presented to Dr. David Edward Attarian, an orthopaedic surgeon who specializes in hip surgery, for a second opinion, due to her continued left leg pain. Dr. Attarian's records do not reflect that Plaintiff reported any back injury or back symptoms to him on this visit. Dr. Attarian examined Plaintiff, and concluded that he agreed with her permanent partial disability rating of 12 percent, and that she was in need of no further treatment regarding her left hip. *Page 6 
13. On March 17, 2006 Plaintiff awoke with an acute onset of pain in her right lumbar region and right hip. This episode followed a day at work in which Plaintiff engaged in significant lifting and walking while working with customers who were furnishing entire houses. Plaintiff was unable to work due to the severity of her pain. Plaintiff described her pain as moving from the left to the right side of her back, causing her to fear that she might become paralyzed. This incident is the subject of another claim, and is not addressed herein.
14. On April 3, 2006 Plaintiff returned to Dr. Attarian. Dr. Attarian's records from this visit indicate that Plaintiff's symptoms appeared to be from her lower back and that he was unable to causally relate these symptoms to her June 7, 2004 work injury. Dr. Attarian ordered magnetic resonance imaging (MRI) of Plaintiff's lumbar spine, the results of which revealed multi-level degenerative disc disease and facet degenerative joint disease. The MRI also revealed a focal left foraminal/lateral disc protrusion displacing the exiting, extra-foraminal left nerve root at the L4 level of the spine.
15. Plaintiff next sought treatment from Dr. Robert Wayne Nudelman, a neurosurgeon, on July 14, 2006. Plaintiff completed a patient information form for Dr. Nudelman, where she reported twisting her back in connection with her June 7, 2004 work injury. At this initial visit, Plaintiff reported pain primarily in her left buttock, with some midline lower back pain. Dr. Nudelman noted that Plaintiff's April 2006 MRI revealed a large left foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine, which was compressing the left nerve root at the L4 level of the spine. Dr. Nudelman wrote in his office note from this visit that it was possible that the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine was contributing to Plaintiff's symptoms, but he also noted that other possible causes could be included in the differential diagnosis. The Full Commission finds *Page 7 
that Dr. Nudelman's language in this July 14, 2006 office note represents his initial, differential diagnosis after seeing Plaintiff only once and without having the benefit of reviewing all of Plaintiff's pertinent medical records or observing her response to epidural steroid injections administered to the L4-L5 level of the spine.
16. Dr. Nudelman ordered epidural steroid injections, which Plaintiff received on October 12, 2006, November 21, 2006, and March 14, 2007. These epidural steroid injections provided complete, although temporary relief of Plaintiff's symptoms, as well as diagnostic corroboration that the etiology of Plaintiff's left lower back, buttock, and lower extremity symptoms was the left nerve root at the L4 level of the spine, and that this nerve root was being compressed by the disc herniation on the left L4-L5 level of the spine.
17. Plaintiff voluntarily terminated her employment with Defendant-Employer on January 18, 2007 because the nature of her job duties changed, requiring her to walk the sales floor a great deal more, causing a significant increase in her pain. After leaving her employment with Defendant-Employer, Plaintiff secured temporary employment at the April 2007 High Point Furniture Market in High Point, North Carolina. In addition, Plaintiff circulated her resume to a number of prospective employers in an effort to secure employment that would not require her to be on her feet as much. Plaintiff was unable to find suitable employment.
18. In correspondence to Plaintiff's counsel dated March 2, 2007 Dr. Nudelman opined, "it is certainly quite possible that the patient [Plaintiff] did suffer her left L4-5 foraminal/extraforaminal disc herniation at the time of her work injury." In correspondence dated June 20, 2007, Plaintiff's counsel asked Dr. Nudelman to review additional medical records, and to clarify his previous causation opinion. Dr. Nudelman opined in his June 29, 2007 correspondence that it was "more likely than not" that Plaintiff's June 7, 2004 work injury *Page 8 
caused the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine, which was, in turn, causing Plaintiff's symptoms of left lower back, left buttock, and left lower extremity pain, as well as loss of sensation in the lateral aspect of the left leg.
19. On February 15, 2008 Plaintiff once again saw Dr. Nudelman, and described pain from her left lower back into the left buttock and posterior thigh. Dr. Nudelman indicated that after years of compression, the damage to the nerve root at the L4 level of the spine might be irreversible and permanent. Further, Dr. Nudelman had concerns that Plaintiff now had diminished left quadricep reflexes, and some loss of sensation in the lateral aspect of the left leg, which could cause permanent pain, sensory deficit, and reflex changes, even with surgical intervention. As a result of these findings, Dr. Nudelman opined that Plaintiff was not at maximum medical improvement with respect to her left lower back, buttock, and lower extremity symptoms, that she required some type of surgical intervention in order to address these symptoms, and that she should remain out of work until further notice.
20. At his deposition, Dr. Nudelman opined to a reasonable degree of medical certainty that the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine found on Plaintiff's April 2006 MRI more likely than not occurred at the time of Plaintiff's June 7, 2004 work injury. Dr. Nudelman based his opinion on Plaintiff's consistent complaints of pain in her left lower back, left buttock, and left lower extremity since the time of her June 7, 2004 work injury, all of which were consistent with the disc herniation that he saw on the April 2006 MRI; his finding on the MRI that the lumbar spine had more of a soft disc herniation, which is more typical of an injury rather than loss of disc space, which would be more indicative of disc herniation due to aging and degenerative changes; and the complete, although temporary relief from left lower back, buttock, and lower extremity pain Plaintiff received from the epidural *Page 9 
steroid injections confirming that the etiology of her complaints was the left nerve root at the L4 level of the spine, rather than the left hip fracture.
21. On cross-examination, in response to the question whether Dr. Nudelman could state to a reasonable degree of medical probability or certainty that Plaintiff's June 7, 2004 work injury caused the disc herniation that he saw on the April 2006 MRI, he stated that he "wouldn't say there's certainty of it. There is certainly probability." Defendants contend that this is a substantively different causation opinion on the part of Dr. Nudelman than his previous testimony, and that his fluctuations in opinion defeat both the competency and credibility of his causation opinions. However, the Full Commission finds, based upon the greater weight of the evidence, that Dr. Nudelman's medical causation opinions never changed in substance, though he may have used different verbiage at different times in order to express those opinions.
22. With respect to Plaintiff's disability caused by her left lower back, buttock, and lower extremity pain, Dr. Nudelman opined to a reasonable degree of medical certainty that Plaintiff was unable to work as of January 18, 2007 when she resigned from her employment with Defendant-Employer due to her level of pain and her job activities that required her to be on her feet more often.
23. The Full Commission finds as fact that Dr. Nudelman's expert medical opinions are credible, competent, and consistent, and gives greater weight to his opinions than to any contrary opinions or evidence from other medical providers in this case.
24. On March 17, 2008 Plaintiff filed a new Form 18 (which is the subject of another claim) alleging that she sustained an injury to the right side of her back while lifting something at work for Defendant-Employer on March 17, 2006. Dr. Nudelman's medical records and testimony reflect that he was aware of these right-sided back symptoms when he rendered his *Page 10 
causation opinions regarding Plaintiff's left-sided back symptoms. As of March 17, 2006, Defendant-Employer had workers' compensation insurance coverage with a different carrier other than Defendant-Carrier.
25. Defendants accepted the compensability of Plaintiff's June 7, 2004 work injury on a Form 60 admission of Plaintiff's right to compensation. Defendants paid both medical compensation as well as temporary total disability compensation until Plaintiff returned to work, and for a period thereafter paid temporary partial disability compensation. The injury described on the Form 60 was a "left hip fracture."
26. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's June 7, 2004 work injury caused the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine found on Plaintiff's April 2006 MRI, and that this disc herniation occurred at the time of the June 7, 2004 work injury. The Full Commission further finds as fact that the compression on the L4 nerve root by the disc herniation caused the radicular pain into Plaintiff's left buttock and thigh, and the numbness in her left lower leg.
27. The Full Commission finds as fact that as a result of Plaintiff's June 7, 2004 work injury to her left lower back she became temporarily and totally disabled from any employment on January 18, 2007 when she resigned from her employment with Defendant-Employer. Plaintiff's temporary employment at the High Point Furniture Market in High Point, North Carolina in April 2007 is not indicative of wage earning capacity; however, Defendants are entitled to a credit based on her earnings.
28. Notwithstanding Dr. Nudelman's subsequent opinion that Plaintiff was unable to work as of January 18, 2007, the Full Commission finds as fact that Plaintiff still made diligent and reasonable efforts after January 18, 2007 to secure employment that would not require her to *Page 11 
be on her feet for long periods of time; however, she was unsuccessful in finding suitable employment, despite these efforts. Dr. Nudelman wrote Plaintiff completely out of work on February 18, 2008 due to her June 7, 2004 work injury.
29. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is not at maximum medical improvement, and that she requires further medical evaluations, testing, and treatment, in order to effect a cure, to give relief, and/or to lessen her period of disability. Dr. Nudelman is of the opinion, and the Full Commission finds as fact, that Plaintiff continues to have left lumbar radicular pain from her disc herniation, some loss of sensation in the left leg, and diminished left knee reflex, all of which are indicative of progressive nerve dysfunction. Plaintiff continues to have a large disc herniation, and she needs an updated MRI and a lumbar discectomy. Plaintiff could develop progressive weakness in the left lower extremity, if the nerve issues are not addressed.
30. Plaintiff's average weekly wage of $1,083.88 yields the maximum compensation rate for the year 2004 of $688.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on June 7, 2004, resulting in a fracture to her left hip, as well as a foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine. N.C. Gen. Stat. § 97-2(6) (2007).
2. Dr. Robert Wayne Nudelman's opinions on medical causation, which the Full *Page 12 
Commission has found as fact herein, are sufficient to establish that the foraminal and extra-foraminal disc herniation at the L4-L5 level of the spine found on Plaintiff's April 2006 MRI more likely than not occurred at the time of Plaintiff's June 7, 2004 work injury, and that the compression on the L4 nerve from this disc herniation is the cause of Plaintiff's radicular pain into the left buttock and thigh, and her numbness in the left lower extremity. Dr. Nudelman's medical records and testimony reflect that he was aware of Plaintiff's right-sided back symptoms when he rendered these causation opinions regarding Plaintiff's left-sided back symptoms. Dr. Nudelman's opinions satisfy the requirements of Holley v. ACTS, Inc., which set forth the minimum standards required for the admission of medical causation testimony in workers' compensation cases, including the requirement that the testimony be "more likely than not," and Young v. Hickory Business Furniture, which requires that an expert opinion be based on more than mere speculation and conjecture. Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750
(2003); Young v. Hickory Business Furniture, 353 N.C. 227, 538 S.E.2d 912
(2000).
3. In Parsons v. Pantry, Inc., the North Carolina Court of Appeals held that once a Plaintiff in a workers' compensation claim proves that their work injury is compensable, a rebuttable presumption arises that additional medical treatment is directly related to the compensable injury. Parsons v. Pantry, Inc., 126 N.C. App. 540, 485 S.E.2d 867
(1997). A Defendant may rebut this presumption with evidence that the medical treatment sought is not directly related to the compensable injury. Reinninger v. Prestige Fabricators, Inc., 136 N.C. App. 255,523 S.E.2d 720 (1999). In Perez v. American Airlines/AMR Corp., the North Carolina Court of Appeals applied the Parsons presumption to hold that the payment of compensation by a Defendant pursuant to a Form 60 amounts to a determination of compensability, such that the *Page 13 Parsons presumption will apply. Perez v. American Airlines/AMR Corp.,174 N.C. App. 128, 620 S.E.2d 288 (2005).
4. In the case at bar, Defendants accepted the compensability of Plaintiff's June 7, 2004 work injury through the filing of a Form 60, and paid both medical compensation and indemnity compensation. Therefore, under Parsons and Perez, there is a presumption that the medical treatment Plaintiff received for her injury, including her left lower back symptoms, which began after the admitted injury, is directly related to the June 7, 2004 work injury. The burden of proof is on Defendants to rebut this presumption. Perez, 174 N.C. App. at 128; 620 S.E.2d 288;Reinninger, 136 N.C. App. at 255; 523 S.E.2d 720; Parsons,126 N.C. App. at 540; 485 S.E.2d 867.
5. Despite the Parsons presumption in her favor, Plaintiff presented sufficient evidence to prove that her left lower back condition is causally related to her June 7, 2004 work injury. Dr. Nudelman's medical causation opinions, which the Full Commission herein found to be credible, competent, and consistent, and accorded great weight, never changed in substance, though he may have used different verbiage at different times in order to express those opinions. Young, 353 N.C. 227,538 S.E.2d 912 (2000).
6. With respect to Plaintiff's disability due to her left lower back, buttock, and lower extremity pain and numbness, Plaintiff produced sufficient evidence to prove that she was unable to work as of January 18, 2007, when she resigned from her employment with Defendant-Employer. Notwithstanding Dr. Nudelman's subsequent opinion that Plaintiff was unable to work as of January 18, 2007, Plaintiff still made diligent and reasonable efforts after this date to secure suitable employment; however, she was unsuccessful. Once Dr. Nudelman wrote Plaintiff completely out of work on February 18, 2008, she had written confirmation of medical *Page 14 
disability from any employment due to her June 7, 2004 work injury. Plaintiff proved total disability under prong one (1) of Russell v.Lowe's Product Distribution. N.C. Gen. Stat. § 97-29 (2007); Russell v.Lowe's Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Moreover, Plaintiff's reasonable, but unsuccessful efforts to locate suitable employment after January 18, 2007 satisfy prong two (2) ofRussell during the time she looked for work. Id.
7. Plaintiff is not at maximum medical improvement with respect to her left lower back injury, and she requires further medical evaluations, testing, and treatment, including, but not limited to a new lumbar MRI and a lumbar discectomy, and any other reasonably required treatment and/or diagnostic testing ordered by Dr. Nudelman, in order to effect a cure, to give relief, and/or to lessen her period of disability. N.C. Gen. Stat. § 97-25 (2007).
8. Plaintiff's average weekly wage of $1,083.88 yields the maximum compensation rate for the year 2004 of $688.00. N.C. Gen. Stat. § 97-2(5) (2007).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $688.00 per week from January 18, 2007 through the present and continuing until further Order of the North Carolina Industrial Commission. The accrued compensation shall be paid in a lump sum. Defendants are granted a credit for Plaintiff's earnings at the April 2007 High Point Furniture Market.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's June 7, 2004 work injury, for so long as such evaluations, examinations, and *Page 15 
treatments may reasonably be required to effect a cure, provide relief, or lessen the period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall pay 25 percent of any accrued compensation directly to Plaintiff's counsel, and thereafter deduct and pay directly to Plaintiff's counsel every fourth (4th) check from future compensation due Plaintiff.
5. Defendants shall pay the costs of these proceedings.
This the ___ day of February 2009.
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_______________________ PAMELA T. YOUNG CHAIR
S/_______________________ DANNY LEE McDONALD COMMISSIONER *Page 1